TAYLOR (SNOW v.).  See Case No. 13,148.

TAYLOR (SPERRING v.).  See Case No. 13,-235.

TAYLOR (STARR v.).  See Case No. 13,319.

TAYLOR (STEELMAN v.).  See Case No. 13,-349.

TAYLOR (STOUGHTON v.).  See Case No. 13,502.

## Case No. 13,807.

### TAYLOR et al. v. TWENTY-FIVE THOUSAND DOLLARS.

[Bee, 175.] [1]

District Court, D. South Carolina.  Nov., 1801.

SALVAGE—COMPENSATION—HOW DETERMINED.

Salvage must be proportioned to the risque run, the service rendered, and the amount of property saved. And encouragement must be given to assist in cases of this sort.

[Cited in Baker v. The Slobodna, 35 Fed. 541.]

In admiralty.

BEE, District Judge. It appears in this cause that the schooner Friendship, from Nassau, bound to this port, was wrecked on the 7th instant, upon the Rattlesnake shoal, off Dewees' Island, two miles distant from any shore. The vessel beat a great way over the breakers, and the sea ran very high. They got the boat over the side, with a view to procure assistance from shore; but she broke away with one man in her, and could not return. One attempt to save themselves on a raft failed; they had determined to make a second, considering it as the last resource. Two pilot boats appeared off, but found it impossible to give them assistance. From five o'clock in the morning, when the vessel struck, to four in the afternoon, the crew were in great danger, and much alarmed for their final safety. At that hour, they were overjoyed at the sight of a canoe and four hands, with which Taylor and Deliessline had come to their assistance. As soon as they got on board, the captain said he had money, and was very desirous to save it. It was immediately put into the boat, and carried on shore, with the passengers and crew, except the captain, and one of two others. The salvors went off a second time, with two boats, one of which could not venture to go alongside. The other effected it, at great risque; but saved nothing from the vessel, except some trunks and baggage. It appeared that the seaman, who had drifted away in the schooner's boat, returned on the morning of the 9th, not having been able sooner to procure assistance. At this time it was high water, and

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Hon. Thomas Bee, District Judge.]

the sea rough; the vessel had bilged, and the waves were breaking over her. It was fully proved that these unfortunate persons were treated by Mr. Deliessline and Capt. Taylor with the greatest kindness. It appeared that Mr. Deliessline has a large family, and is in narrow circumstances; and that the loss of him and of his negroes in this attempt would have been attended with very serious consequences. The counsel for the actors insisted that under the circumstances of this case, the risque of the salvors, and the danger of the persons and property thus meritoriously saved would justify, and even called for a proportion not less than one third for salvage. On the other side, the services were readily admitted, but it was contended that the danger to the salvors had been too strongly set forth.

In determining cases of salvage, I have uniformly proceeded on the following considerations: (1) The service rendered. (2) The risque of the party rendering this service. (3) The value of the property saved by their means. In the present case the service was great. The parties saved were in imminent danger, and had little chance of being otherwise relieved. Two pilot boats saw their distress, but would not venture to come near them; and the persons on Long Island, to which the schooner's boat had drifted, thought the danger so great, that they would not risque themselves, their negroes, or their boats. One raft had failed; their remaining hope, from a second, was very precarious; and all the people saved are ready to acknowledge that they must have perished without the assistance given by the actors.

As to the second point, it appears that the sea ran high, and that the persons in the boat did not board the schooner without danger. It was not indeed, so imminent, as one of the counsel endeavoured to make it appear. I shall not, however, detract from the merit of the parties. Their motives were generous and disinterested, and their assistance no less prompt than voluntary. Many others, in their situation, would have remained snugly on shore. It is true, that they consulted their feelings, and did not calculate their interests. This is their highest praise; and though it has been said, that their reward is laid up in heaven, I see no reason why they should not receive such as may be decreed to them on earth. Deliessline's risque was unquestionably great; for, if he had perished with his boat and negroes, his numerous family would have been exposed to severe distress.

As to the third point: the property saved consisted of no less a sum than 25,000 dollars. If these had not been received into the boat at the time they were, it is doubtful whether they could have been saved at all. Molloy (L. 2. c. 5. s. 4.) quotes the Rhodian law as fixing a fifth, or tenth, in cases like this, according to the case, or difficulty of effecting the salvage. He adds: "Rich goods, as gold and silver, pay less than goods of greater bulk, because they are in less danger." The observations on the Laws of Oleron, quoted in page 125 of a treatise on the Dominion of the Sea, say that, according to those laws, divers and salvors should take one half, a third, or a tenth of the things saved, according to the depth of water, out of which they were recovered. In 1 Rob. Adm. 313, Sir William Scott, in a case of salvage by a boat going to the relief of a distressed vessel, expresses his opinion, as to the rate of reward, in terms to which I entirely accede. See the case.

Upon a full review of the circumstances before me, and upon mature consideration of their applicability to the principles I have laid down, and after inquiry as to what would have been the amount of premium upon the insurance of this property, I decree, that one fifth thereof be paid to these salvors; not only for compensation of their risque, their services, and their humanity, but also as an inducement to others to "go and do likewise." Let the costs of this suit be paid by the claimants out of the residue, after deducting this proportion for salvage.